Good morning. May it please the court. Before we begin, I think it's 10 minutes aside. Yeah. Good morning, your honors. May it please the court. My name is Patricia Rodriguez and I represent the appellants Mr. and Mrs. Wasjutin. And at this time, I would like to reserve two minutes for rebuttal. Okay. The initial issues that I'll address are with the court's order regarding the Homeowner's Bill of Rights 2923.6C2. As a bit of a background, the purpose of Homeowner's Bill of Rights was to codify the national mortgage settlement. It further was to give borrowers the rights not just against the signatories of that national mortgage settlement, but also entities such as SPS that were servicers but not part of that agreement. The notice of defaults, outreach, as well as single point of contacts, and restricting dual tracking. In regards to the case at hand, the issue is whether or not the submission of a notice of acceleration is the equivalent of recording a notice of default in the public record. The statute itself does not define what it means by recording. It would seem that the recording of the bank's file is the equivalent of recording the notice of default in the public record. And that's because you have to first accelerate the note in order for there to be a default. So simply recording that in... Hold on a second. There was a recording of a notice of acceleration? There was a recording of it in the file, in the bank's file, and submission to the borrower. It was not recorded in the public record. So the question is, the fact that the... There was a letter sent to the... I'm sorry. There was a letter sent to the borrower. Right, that accelerated the note. And so that means it's the first step necessary in order to then record a notice of default in the public record. But it wasn't recorded. It was recorded within the file of the borrower's loan that the servicer... That's not the kind of recording that she's talking about. But it's not clear what the legislature was talking about with it. So to be clear, no, it was not recorded in the public record. However, it was recorded in the borrower's file and was required in order to record the notice of default in the public record. But it wasn't... The second step was never done. And so the whole cause of action goes away, whether you're talking about the former statute or the current statute or anything else. Your Honor, in addition to that issue, under the statute and under the case, the court should have given leave to amend to further allege causes of action that were relevant to the fact that it was accelerated while they were in review. That's the point. They're in review. They're given an offer. And while that's all occurring, their note is accelerated. But the notice, as I understand it, had means of cure, right? I'm sorry, say that again. Had means of cure. Yes, there is means of cure. However, courts have ruled that simply withdrawing that acceleration notice or withdrawing the notice of default is not a cure if it was done while the review is in process. If it was wrongful. I mean, if you have a cause of... In other words, the only cause of action that you're relying on is one... There might be something else that was violated in the statute by simply writing this letter and accelerating. But you're not talking about that. You're only talking about the dual tracking provision that does have as a prerequisite recording of the notice. Yes, Your Honor, but I'm also saying that the court should have allowed leave to amend if there was any... To do what? To say what? To allege a violation of 2923.55, which was the outreach issue, which that prior to sending this notice of acceleration, they were supposed to do certain things in reaching out to the borrower. And although they had them under review, they failed to do those outreach, which was give them a copy of the note, give them a copy of the accounting of the account during the time that SPS was servicing it. So it was broader than just the 2923.6C2. If the court concluded that recording within the statute meant only recording in the public record, there was still a clear cause of action for not having reached out to the borrower that was articulated in the pleadings in the First Amendment complaint. If the court doesn't have questions on that, I'll move on to the other causes of action, given that there's limited time. So the amendment would be to allege a violation of what? 2923.55, a failure to pre-notice of default outreach. And is there a private cause of action on that statute? Yes, Your Honor, there is. The only one that appears to be limited is the 2924A6. And is there any California authority to suggest that the statute you were just discussing with Judge Berzon has a private cause of action? There's no case law saying that it has a private cause of action. 2923.55, yes, there's multiple cases that conclude that there's private right of action as to that cause of action. Again, the one that's limited by some case law is 2924A6, which I'll get to. So moving on to the wrongful foreclosure claim, which is also the 2924A6 claim, which is all related to whether or not the proper beneficiary under the deed of trust is the entity foreclosing. And the issue turns on for the court and many courts of whether this is a completed foreclosure or a initiated foreclosure that has not yet been concluded. And there is case law on both sides. This Ninth District has seemingly come out on the sides. Not the Ninth District, the Northern District of California. I was saying the Ninth Circuit, Your Honor, is what I meant to say, seemingly does have one case that indicates that pre the conclusion of the foreclosure, you do not have standing. However, I would suggest to the court that the reasoning in Glaske was solidified in Ivanova. Even though that is a post foreclosure case, it seems to be the only operative case that we have as to the California Supreme Court's interpretation of a borrower's ability to challenge the wrongful nature or the assignment or their ability to collect on the note. Two things about that. First is, haven't the California Courts of Appeal since Ivanova all concluded otherwise? No, they have not all concluded otherwise. Has any concluded that there is such a cause of action? Yes, Your Honor, and I can cite the court to those references. One is from a 2016 case, and one is from a, excuse me. There is a 2016 case, Bundy v. Saline. That's a published opinion. I do believe it is a published opinion, Your Honor. It's got a Westlaw citation. That doesn't mean it's published. Correct. I don't have in my notes, but I do believe it is a published opinion. It's a Northern District, California, March 17, 2016 case. But that's not California. I meant California State Appellate Court. Is there one? I thought there were several to the contrary. So there's Powell v. Wells Fargo, also a, that's also an Indy, California app. Right. I'm asking you about is there a, my understanding is that there is two or three post-Ivanova opinions, at least two, maybe more than two, from the California Court of Appeals not reading Ivanova the way you're saying. Yes, I do believe that there are two cases not interpreting Ivanova to apply to. Or none to the contrary. Is that right? They are to the contrary, Your Honor. Or there are none to the contrary. None that support your position. No California Court of Appeals case. Is that right? Correct, Your Honor. My argument is. You should have said that the first time. Yes, Your Honor. I'm sorry for the confusion. There is no California District, excuse me, there is no California Court of Appeals case that supports the position. However, the California Supreme Court case, the only one that addresses this issue pre-foreclosure or post-foreclosure, very clearly indicates that the borrower does have standing to challenge an assignment and to challenge a foreclosure. It seems applicable. Isn't the first paragraph in that opinion that we're not talking about a pre-foreclosure? Right. They're clear that because this is a post-foreclosure case, they have to limit their holding to post-foreclosure. However, how they deal with pre-foreclosure cases was indicated by the fact that they sent Mendoza and Keshgar back to the lower courts to reevaluate those cases based on the Ivanova decision. And what did Keshgar conclude? Now, when it was reevaluated, Keshgar and Mendoza concluded that the issue of voidable versus voidable meant that the case was still to be dismissed because it was an issue of securitization. However, so this is why I'm saying there is no controlling California case. And my second question is sort of back to where we started, which is if there were a pre-foreclosure cause of action, wouldn't there have to be somewhere further down the line toward foreclosure than where we are now, which is no one's taken any step to foreclose? Well, they've taken the first step. They've accelerated the note. That's not a step to foreclose. It's a step to accelerate the note, but nobody's tried to foreclose yet. In any way, they've done nothing towards a foreclosure. Well, at the time of the case, they had done nothing. Subsequent to that, there was a notice of default recorded. However, limiting it to this record, Your Honor, even so, the notice of accelerations explicitly says on it it's a notice of default under the note. It just isn't a recorded notice of default. The document itself is titled Notice of Default. And then they go on to specify that the default is caused by the acceleration. But, in fact, if the people had paid up at that point, there wouldn't have been any sale. I mean, it was way down the line in terms of if you're looking for a case to discuss the reach of EVANOVA, this one is as far over to the other side as you could get. Absolutely, Your Honor. But the logic behind it, the rationale is no different, that the borrower should be at any point able to challenge, if this is even the right entity that they're paying to, if this is the right entity that is collecting money from them. And this isn't some phantom idea. Even if there was no notice of foreclosure. Right. Because this isn't some phantom idea of, like, the potential for multiple people to try to collect on the loan. In my practice, we see where third parties, companies that aren't even banks that just pretend to be banks, will record a trustee's deed upon sale. There is the potential for them to be paying the wrong party and to be paying the wrong party. Certainly they should be able to challenge. If the right entity is the one accelerating their note and putting them in a position of default in which they can now have a nonjudicial foreclosure, whereas prior to this entity claiming a right to accelerate their note, there's no potential for them to have a nonjudicial foreclosure. Well, is there no, I don't know, this is an area I don't know very well, but, I mean, if somebody is sending you letters and saying you owe me money and you believe you don't owe them money, quite aside from any foreclosure, I mean, can't you just say, I'm sorry, I don't owe you money, and if they want to do something about it, it's, you know, if somebody calls me up and says pay me $1,000, I say, I'm sorry, I'm not paying you, I don't owe you the money. If you want it, come sue me. So the difference is, in this context, that if you do that and you just say, you know, come after me, then the notice of default, the notice of trustee sale, then the nonjudicial foreclosure process starts. There's no remedy here for the borrower if they aren't able to challenge this in some type of legal proceeding because otherwise, and this is exactly why it happens here more than other states. You can't find a declaratory judgment action that says, I don't owe this person money, why not? Not at all because a couple of reasons. One, you get into the tender issue. They'll say you need to tender the balance of the loan. No, no, I'm just filing an action saying it's a declaratory judgment. This guy has come to me and said, I don't owe him money. I want a declaratory judgment that I don't owe him money. And in every instance I have proceeded on those claims, the court has said that the issue is not ripe, that there's no ripeness. He's asking me to send him the money. I don't want to send him money. He goes, I don't owe him any money. Somebody writes me a letter and says you owe me $10,000, and I say I don't, and he says, I'm going to do something to you. I'm going to go to court and say, this guy says I owe him $10,000. He's threatening me. I entirely agree that that should be a recourse for the borrowers, but after eight years of doing this, that is not a plan that should work. I suggest you try it that way. Just forget about the foreclosure. Just do an ordinary sort of declaration of no contract. There is no contract. I don't owe him money. That generally doesn't stop them from being able to continue with the nonjudicial foreclosure process. But that's not what's happening here. You're talking about some other hypothetical case, correct? No, I mean, it is happening here. They have accelerated the note. They have said that they're in default. No, no. I guess my understanding is not clear when I say that. Is it the contention here that your client doesn't owe this entity any money? That's the argument. That's certainly what's been put in the complaint. You mean that this is a complete stranger to the transaction, that they owe money to somebody else and not this person? Is that your argument? Right, right. The argument is that they owe, if anybody, the original lender. But when the original lender sold it through the securitization process, they were supposed to do four endorsements, four assignments. Oh, I see. No, I get it. No, it's not as though it's a complete fraudulent person coming in. You're saying that the chain is deficient and therefore. The chain is deficient, but also there are issues with the original lender when they assigned it. So there would be chain of title issues as to the assignment. SBS is acting as an agent on behalf of Wells Fargo who's claiming an interest as a trustee of a securitized trust. But their authority to send that notice of default to accelerate it, that's what's in question and that's what should be allowed to be challenged. Okay. Why don't we hear from the other side? We've taken you over time, but we will give you a chance to respond. Thank you. Good morning, Your Honors. Brian Pano appearing on behalf of the appellee select portfolio servicing. I don't have a lot to add that wasn't in our brief. I would like to take a moment to briefly comment on some of the arguments presented by counsel. I fear, as we sort of noted in our brief, I fear we've strayed from the actual content of the underlying pleading in this case. The appellant's opening brief and their reply brief seem to focus almost exclusively on a wrongful loan securitization theory. At bottom, this lawsuit is based on a purported violation of the California Homeowner Bill of Rights. In particular, the underlying action is premised on a violation of California Civil Code, Section 2923.6. I think counsel clarified today that the appellant's contention is that the mere mailing of a default letter in connection with a loan contract violates the dual tracking protections under Section 2923.6. As we pointed out in our brief, that's simply not consistent with the plain language of the statute. The statute very clearly prescribes the act of recording a notice of default, and there simply is no allegation in this lawsuit, and I think that's been clarified today. Well, let me go back to your first point. I don't understand why you're saying that the chain of title, I guess if we call it that way, the authority to foreclose question isn't in the underlying complaint. Sure. There's a cause of action for wrongful foreclosure. It says that there's an actual controversy between the plaintiffs and defendants regarding their respective rights and duties. The plaintiffs contend that the defendants and each of them don't have the right to foreclose, and then they're attempting to foreclose without any legal authority or standing to do so. So why isn't that? Maybe I probably was less clear, and perhaps I overstated slightly what I meant to convey is aside from recitations of elements of potential causes of action, the actual factual content in the complaint, the plausible factual content within the complaint, doesn't address when the loan was originated. The argument today was at the time of origination, there were defects in the loan being securitized. Those allegations aren't made in the complaint. What we have in the complaint are more passive references to a lack of standing on the part of my client, select portfolio servicing. And the wrongful foreclosure claim also is tied in part to the dual tracking violation under Section 2923.6. But even if we assume for the sake of argument that the complaint alleges that the loan wasn't timely sold to the investor of a securitization trust, the Ninth Circuit has made clear that in those circumstances, the defects in the securitization of the loan would render the transfer nearly voidable as opposed to void. And we know under the Ivanova decision that to have standing, the borrower has to establish a void transfer. Well, if everything else were okay, i.e., the question of what Ivanova, of whether there's a permissible wrongful foreclosure action at this stage or an Ivanova-like action, wouldn't there be a leave to amend? I mean, there is some material in here, it just isn't very specific about what the lack of authority claim is. Well, I don't think if the arguments,  that defect wasn't cured at that stage. I think that's somewhat indicative of an inability, perhaps, on the part of the appellants to have further amended. But I guess going back to my previous comment, at the end of the day if the allegation is that the borrowers in this case have standing because the loan was not sold to an investment trust in accordance with a pooling and servicing agreement, I think the law in the Ninth Circuit and in California, save the Glaske decision, has been fairly consistent in finding that that type of a defect would render the transaction merely voidable as opposed to void. Because it could be ratified. Because it could be ratified. And what's the Ninth Circuit case? The In re Turner decision. Which is a published decision. 859 F3, 1145. I'm not sure if I've answered your Honor's question, but I want to save some time for my colleague, Miss Gekker. So I just want to make a couple other points. I didn't really, you didn't say you were splitting time. Oh, I should have mentioned that. We were pointing to the time.       Gekker. I'm representing Mr. Gekker. I'm representing Mr. Gekker. I represent Select Portfolio Servicing. Well, Bank of America is just not in this complaint. I just wouldn't worry. I mean, there's no point. I'm sorry. Bank of America doesn't seem to have any role in this complaint. I wouldn't particularly worry about it. I think that's likely what Miss Gekker would have liked. So if she wants to say that, she said it. All right. I just wanted to make a couple more comments. You've used six minutes, leaving four for your colleague. I think my colleague will be okay. I think her arguments, you sort of touched on what they'll be. And I'll be brief. There was just a statement that I think it's important for the court to realize that Section 2923.6 and the other statute the counsel referenced, 2923.55, were both repealed effective January 1st of 2018. They are no longer active. Well, that is a really complicated question. I have another case dealing with that. It's a mess. Because it was actually extended is what actually happened. I.e., there was other statutes passed that are more protective of the plaintiffs than the existing ones. I don't know about more protective. For example, the due tracking statute doesn't have the notice of default requirement anymore. It's become much more protective, as I understand it, of the plaintiffs. And they have different numbers. Whether California really would think that these causes of action go away seems extremely unlikely to me. Although I know there's California law that seems to say something like that in some different circumstances. We'd have to have a whole briefing schedule if we're going to get into that. I just wanted to bring it to the court. So your position is that the causes of action don't exist anymore? They've been extinguished? Our position would be that under California law, without a saving clause, unless the right has vested. No, but there's another exception for continuity. Sure. In this case, I do acknowledge that there were some amended statutes that went into place effective January 1st of 2018 that in some ways cover some of the same conduct. There are some limitations. Actually, I think they're more expansive, as I said. I think in the dual tracking context, there are no longer appeal rights. But I don't want to take too much more time. I want to give my colleagues some time to argue. Well, if we have to get into that, we've got a big problem because it's really complicated. And I'm not sure we're not going to have to certify a discretion to the California Supreme Court sooner or later. I understand where you're coming from, Your Honor. Thank you, Your Honor. Now, before we begin, was your intention to split 50-50? What was your original intention? That was the intent. Why don't we put five minutes on the clock, and you can have a conversation with him afterwards. Thank you. I doubt I will need it. Good morning. May it please the Court. I've always said I've been in that position when I was a lawyer. And the only thing I ever did, he used to say, what do you do? You make faces. Sit there and make faces. All right. Go ahead. You both look highly competent and somewhat inexperienced. The best way to do this is at the outset say, we intend to split time, we intend to do it 50-50, or whatever you intend to do, let us know. And then we know that we're cutting into the second person's time. The second piece of advice I have to you is never be the second person. Okay, go ahead. I'll keep that in mind for next time. He starts to make faces. Okay, go ahead. Yes. Good morning. May it please the Court. Elena Gecker, 4, defendant in the Pelley Bank of America, successor to Countrywide. Your Honor has touched on this. The only cause of action against Bank of America in this action is for the former California Civil Code Section 292486, the dual tracking. However, there are only two paragraphs worth of allegations asked to Bank of America in this claim. That's paragraph 3, paragraph 4. They say that Countrywide was the original lender and conducted business in Santa Barbara. So really, there are no allegations in the complaint supporting the fact that Bank of America recorded a notice of default, was in any way involved with the foreclosure process, or was considering appellants for any loan modification options. So there really is no basis for a violation of former 292486, current 2923.6. Is it your position as well that that statute has disappeared retroactively to an existing lawsuit? We do not take any position as to that issue because there are no allegations to Bank of America. You're right. And unless there are any other questions, I really don't have much else to say. So I guess you didn't need to respond. I did not. As you said. As promised. Okay. Thank you. Thank you. Now, we took you over time. Let's put two minutes on the clock. Thank you, Your Honor. Just quickly to address the issues with regards to Bank of America, I actually would read the complaint to see that the causes of action say against all defendants. So it would be that all the allegations are levied against all of the defendants, including Bank of America. It's also allegations. But you don't allege anything that the Bank of America did or the country bank did with regard to the foreclosure. This goes back to whether or not you find that Wells Fargo is acting illegally or that borrowers have the opportunity to challenge Wells Fargo ability to, one, collect the monies due under the note, and two, foreclose on the property under the deed of trust. If Wells Fargo does not have that authority, then when Bank of America was the servicer seemingly acting on behalf of Wells Fargo, they lack that same authority. It would be equally as illegal. But they didn't do it. Bank of America was the original servicer. I know, but Bank of America didn't write the default letter and didn't send the – and there seems to be no allegation that service portfolio was an agent for Bank of America. There's just no connection to Bank of America or anything that happened other than the original loan. No, no. SBS clearly says that they're a servicer and an agent for Wells Fargo, the trustee of the Securitized Trust. Prior to them being the servicer, Bank of America was the servicer. Okay. So it's clear that Bank of America had to be acting on behalf of someone or themselves. But what did they do that gave rise to this lawsuit? They collected monies under that loan. Right, okay. And they seemingly pursued collection of the loan. They didn't pursue collection. I mean, in the past, but that was all fine until they stopped paying. No. So the allegations in the complaint are saying that at no time, once the securitization occurred and Wells Fargo came in acting as a trustee for the Securitized Trust, was it legal for anyone to collect on their behalf, whether that was Bank of America back then or that's SPS now. Where does it say that? You mean where the complaint alleges in the wrongful foreclosure action against all defendants that they were illegally collecting monies and were illegally trying to foreclose? And if the Court gives me a moment, I can point the Court to the specific allegation. Yes, they were illegally trying to foreclose, but Bank of America isn't trying to foreclose. Well, I don't want to belabor the point. I know that there were other issues. You assert that the defendants initiated and commenced foreclosure procedures. But nowhere do you allege that you say that you've asserted that, but actually in the factual section you didn't assert that with regard to Bank of America. I'm actually – I withdraw, then, Your Honor. I see that we stated here against defendant-select portfolio only under the wrongful foreclosure action, and that's where I was believing that we had also inserted Bank of America there. So I'll move on from that point and concede that Bank of America may not be held to the same standard as SPS and Wells Fargo. To address the other issue that arose on counsel's time with regards to the void versus voidable issue, although the Court has ruled that because it may be voidable and you could ratify it, it thereby isn't something you can challenge, the issue becomes then you're just assuming that it can be ratified. You're saying because it was a voidable loan, it can be ratified, but there's been no evidence that it was ratified or that that's – that voidable loan – But wouldn't you agree that this current complaint – I'm sorry? The current complaint says none of this. It doesn't talk in any specificity whatever about even the timing of the securitization, does it? It's not even in the complaint. So the only question is whether you should have leave to amend, because none of it's in here. Well, certainly we should be given an opportunity for leave to amend. Nothing is in here. All that's in here is very general statements that they didn't have authority. But you don't say why. You don't mention the whole – the usual MERS thing. You don't mention the time limits or anything. None of it's in here. Just going back to the wrongful foreclosure claim, it does say that there was a failure to transfer it through the origination from the originator to the sponsor to the depositor. Yes, but no specificity, no reason why there was a failure, no section of who the A and the B were, nothing. We would be looking for leave to amend to show that we had not yet had the court's order on the original complaint. We only received the court's order on the first amended complaint and were never able to address the concerns that the court had in their order. I'll submit on the argument as is, unless the court has other questions. Okay. Thank you. Thank you. Thank you.
judges: W. Fletcher, Berzon, Owens